IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALICIA DEBBIE APODACA,
on behalf of J.M.D, a minor,

        Plaintiff,

v.                                         CIV 12-0402 KBM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

# MEMORANDUM OPINION & ORDER

Plaintiff moves to reverse and remand the Administration's most recent denial of benefits for her young daughter, who was born with abnormal blood vessels in the brain ("cavernous hemangioma"), a leg deformity, and vision problems. *See Doc. 19* at 1-2. After a hearing at which Plaintiff testified, Administrative Law Judge ("ALJ") Ben Willner denied benefits, the Appeals Council denied a request for review, and this appeal followed.[1] Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 4, 7.*

The general inquiry is whether ALJ Willner applied the correct legal standards, and whether his decision is supported by substantial evidence. A deficiency in either area is grounds

---

[1] Documents 15-1 through 15-8 and 16-1 through 16-6 comprise the sealed Administrative Record ("Record"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page. ALJ Willner's decision appears at pages 12 through 21. Plaintiff initially applied for supplemental security income benefits in 2005, when her daughter was some twenty months old, and did not appeal that denial. *See Doc. 19* at 1; *Record* at 113-14. In June 2008, she applied again for the same when she was living in Las Cruces. *See, e.g., Record* at 35-36, 52, 99. ALJ Willner is located in Albuquerque, and Plaintiff appeared for the February 2010 video conference from El Paso, Texas. *See Record* at 12; *see also* http://www.disabilityjudges.com/state/new-mexico/albuquerque.

for remand.  *See, e.g., Keyes-Zachary v. Astrue,* 695 F. 3d 1156, 1161 (10th Cir. 2012); *Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010); *Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005); *Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004).  Having carefully reviewed the parties' positions and the material portions of the Record, the Court grants the motion and remands the matter to the Administration for further proceedings.

## Factual Background

Since the error dispositive of remand is largely one of law, a detailed discussion of the child's impairments is unnecessary.  For background purposes, the Court incorporates Plaintiff's overview.  *See Doc. 19* at 4-9.

## Analysis

Because this application involves a child, different sequential evaluation steps and standards apply.  The Court recently reviewed these child-specific standards in detail, and the parties agree on them.  *See Baca v. Astrue,* CIV 10-1189 KBM/LFG (Doc. 23, filed 9/30/11); *Docs. 19-22.*  The Court therefore incorporates those general discussions by reference, and notes that this case involves the final step of the three-part inquiry, and whether the child's impairments "functionally equal a listing."  *See Doc. 19* at 4.

Plaintiff makes the equivalency showing if the impairments, alone or in combination, "resulted in marked limitations in two domains of functioning or an 'extreme' limitation in one domain."  *Adams ex rel. D.J.W. v. Astrue,* 659 F.3d 1297, 1299 (10th Cir. 2011) (internal quotations omitted) (quoting 20 C.F.R. § 416.926a(a)); *see also id.* at 1302.  The six possible "domains" are: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for

yourself; and (6) health and physical well-being." *Huffman ex. rel. B.H. v. Astrue,* 290 F. App'x

87, 89 (10th Cir. 2008) (citing 20 C.F.R. § 416.926a(b)(1)(I)-(vi)).  A limitation is "marked"

when it

> interferes seriously with your ability to independently initiate, sustain, or complete activities.  Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities.   "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2).

The grounds that remain after full briefing are whether ALJ Willner:  (1) failed to

properly determine the credibility of Plaintiff's testimony about her daughter's limitations;

(2) inadequately analyzed the two domains of "moving about and manipulating objects" and

"health and well-being" by failing to consider all factors; and (3) erred in crediting the opinion

of nonexamining pediatrician Dr. Jon M. Aase.  *See Doc. 19* at 10-14; *Doc. 22* at 1-2.  Here, ALJ

Willner's insufficient credibility finding alone warrants remand.  This error also has

consequences for his analysis of the domains and the weight he afforded Dr. Aase's opinion.

Thus, the Court need not address the parties' specific arguments concerning the second and third

issues.

ALJ Willner decided credibility by way of one sentence that provides:  "statements

concerning the intensity, persistence and limiting effects of the claimant's symptoms are credible

to the extent they are consistent with the finding that the claimant does not have an impairment

or combination of impairments that functionally equals the listings for the reasons below."

*Record* at 16.  As the Commissioner points out, because Plaintiff was the only person to testify at

the hearing, it follows that this reference to "statements," and later reference to "testimony," relates to that given by Plaintiff.  *See Doc. 21* at 7-8.

The ALJ's opinion also contains a sentence that summarized Plaintiff's testimony about the child's "activities of daily living," to "include playing on the floor with other children, running, wrestling, and playing video games on a "Play station" (sic).  She is able to pick up, and carry her three[-]year[-]old sister.  She takes the bus to from school and walks approximately one block to and from the busstop (sic)."  *Record* at 16.  Although this summary is consistent with some parts of the testimony, it omits Plaintiff's testimony that included the following:

- she walks her daughter to and from the bus stop, *id.* at 37;

- her nine-year-old brother (the daughter's uncle) watches the child while she rides the bus, *id.* at 36-37;

- she has not been able to afford the eye patch her daughter is "supposed to be wearing" because "Medicaid does not pay for her patches" and she receives no "help from their father," *id.* at 39; the eye remains mostly closed without the patches, as was the case at the hearing, *id.* at 47;

- her daughter continues to be afflicted with poor depth perception and eye-hand coordination, such as reaching for the refrigerator handle and missing it, *id.* at 46;

- her daughter "do[es] pretty good" with her leg brace, though she has "pretty much a weakness, she's – the foot does not move, she cannot wiggle her toes, she cannot lift the foot at all" and "without the brace she will constantly fall," *id.* at 39-40, *see also id.* at 48;

- even with the brace she walks with an abnormal gait – "she will like kick her leg and . . . plant her foot" – "she kind of like has a little limp," *id.* at 49; and

- her daughter's "play" consists of swinging on swings, "trying" with the PlayStation, and following her uncle and standing behind him while he shoots a BB gun, *id.* at 43.

Also, the ALJ's citation to "running," "wrestling," and "playing" actually comes from his ***own*** observation of the child during the hearing, and not from Plaintiff's testimony.  *See id.* at

39-40, 41.  Plaintiff vaguely agreed with him that her daughter is "real active" and "tend[s] to runaround . . . play and wrestle," *id.* at 39-40, and she's "normally like that at home," *id.* at 42. Neither the ALJ nor counsel defined precisely for the record what the children were doing during the hearing.  More importantly for the purposes here, the ALJ did not mention what he observed during the hearing about the child's eyesight and/or depth perception.

In the *Smith* case that Plaintiff relies upon, the ALJ's credibility finding consisted of the sentence:  "'Subjective complaints are considered credible only to the extent that they are supported by the evidence of record as summarized in the text of this decision.'"  *Smith ex rel. E.S.D. v. Barnhart,* 157 F. App'x 57, 60 (10th Cir. 2005).  *Smith* cited the *Briggs* case, where the credibility finding consisted of the sentence that testimony from the claimant and his mother "was 'unconvincing, not substantiated by objective medical findings, and credible only to the extent that claimant's impairments have not produced marked and severe limitations.'"  *Id.* at 61 (quoting *Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001)).  Both decisions found the credibility rationales inadequate and remanded.  The Commissioner does not acknowledge or address these binding decisions.  *See Doc. 21* at 7-8.

*Smith, Briggs,* and the later decisions that cite to them remand without consideration of the relevancy of the testimony or the other facets of an ALJ's analysis.  *See Smith,* 157 F. App'x at 61-62 (it did not matter that "subjective complaints" were not at issue or that the testimony was "consistent with the record"); *see also Briggs,* 248 at 1239 ("Without explanation, the ALJ passed over significant probative record evidence and deemed crucial testimony incredible. These errors are fatal"); *Porter ex rel. B.T.P. v. Astrue,* No. CIV.A. 11-2077-KHV, 2012 WL 1190785, at *3 & n.4  (D. Kan. Apr. 9, 2012) ("Because the ALJ did not specifically set forth his finding as to the credibility of BTP's mother, the Court must remand to the Commissioner to set

forth a proper credibility determination. . . . .  Because the Court remands on the credibility

issue, it need not address claimant's other arguments.").  The conclusory credibility finding from

ALJ Willner is of the same sort condemned in *Smith* and *Briggs*, and the error alone is grounds

for remand.

Even if it were appropriate for the Court to consider other aspects of the ALJ Willner's

decision, his observation about the testimony would not change the remand outcome.  First, his

summary of Plaintiff's testimony does not meaningfully embellish his credibility statement or

cast it in a different light.  As discussed above, that summary is incomplete and relies on the

ALJ's own undefined and incomplete observations of the child.  Furthermore, Plaintiff's

testimony about her daughter's gait and eye problems are directly relevant to the two domains at

issue, and a finding of a moderate impairment in both of them would satisfy the third prong of

the analysis by "equivalency."

For example, ALJ Willner concluded that the child ***does*** have a "<u>marked limitation in

health and physical well being</u>," because he "concur[red]" with the "discussion of this domain in

Exhibit 5F."  *Record* at 20 (emphasis original).   Exhibit 5F is Dr. Aase's opinion about the

domains.[2]  The doctor concluded that the child's brain blood vessel abnormalities did not cause

the child's leg or eye conditions, and the "risk of bleeding or local expansion" of the vessels to-

date remained dormant.  He clearly believed she met this domain, because he checked the box so

indicating.  Whether he believed this was due to the child's eye condition alone or due to a

---

[2]  He found no limitations in four of the six domains and did not discuss the evidence that supports his
conclusion.  *See Record* at 291-92.

combination of the eye condition and inactive but present risk, is not entirely clear from his explanatory notes.[3]

Plaintiff contends that the ALJ erred in not finding this domain met due to the "extreme" condition posed by the blood vessel abnormalities.  *See Doc. 19* at 13.  The Court need not, and should not, make that determination on the present record in order to remand.  Even based on a reading of the opinion a whole and Dr. Aase's reasoning as a whole, the ALJ's conclusory adoption of an unclear rationale is itself problematic.  *Compare Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996)  ("Such a bare conclusion is beyond meaningful judicial review."), *with Wall v. Astrue,* 561 F.3d 1048, 1069 (10th Cir. 2009) ("In this case, the ALJ's reasoning is far more extensive.").  Also, the distinction between a "marked" and an "extreme" condition is whether the condition is deemed "serious" versus "very serious."  *See, e.g., Doc. 19* at 3 (and regulations quoted therein).  Neither the ALJ's opinion nor Dr. Aase's reasoning addresses this standard.  The Court cannot make that evaluation in the first instance.  *See, e.g., Wall,* 551 F. 3d at 1072; *Hamlin,* 365 F.3d at 1214.  Therefore, while there are independent grounds to reverse the decision on this domain, at the very least, Plaintiff has established a marked condition in one of the domains.

---

[3]  His analysis provides:

> [the child] apparently developed paralysis of the third cranial nerve, leading to ptosis of the right upper eyelid as well as severe lateral deviation of that eye.  The ptosis and exotropia threatened to cause amblyopia, and she underwent surgical correction of the strabismus in 2/08.  Her vision was found to be 20/60 in the affected right eye and normal in the left.  [The child] also is known to have multiple hemangiomas in the substance of the brain, but none appear to be in a location to cause her third nerve paresis or tibial nerve abnormalities [of the leg] abnormalities described above.  To date, no other cause has been defined, either.  While there is a risk for bleeding or local expansion of the hemangiomas, they have as yet produced no discernible adverse effects.

*Id.* at 292.

The ALJ's lack of a credibility bears directly on whether Plaintiff establishes a marked impairment in a second domain.  The fact that ALJ Willner considered the child's eye condition in connection with the domain that was met is important because he also concurred with Dr. Aase's conclusion that the child ***did not*** meet the "moving about and manipulating objects" domain.  *See Record* at 19.  In that domain they found she had a "less than marked" limitation based on her leg problems.  Specifically, orthopedic surgery for her original "deformity with gait abnormalities . . . eliminated the foot deformity," left the child "walking with a virtually normal gait with a brace" according to Dr. Aase.  *Id.* at 292.  However, the mother's testimony contradicts the conclusion that the child's gait is "virtually normal."   Additionally, this domain is not limited to walking, as per the very definition applied by the ALJ.  Instead, it includes gross and fine motor skills of the hand, such as using scissors or gripping, grasping, and "eye-hand coordination."  *Id.* at 19 (citing 20 C.F.R. §§ 416.926a(j)(2)-(3)).  Limiting this domain to the child's leg problems ignores Plaintiff's testimony about the child's difficulty with grasping and depth perception due to her eye problems.  If the child's eye problems are sufficient, alone or in combination, to meet one domain, then those same conditions and limitations should have been addressed in the other domain where this limitation is directly relevant.  The doctor's and ALJ's findings are incomplete and internally inconsistent on their face.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand *(Doc. 19)* is GRANTED and this matter REMANDED to the Commissioner for further proceedings.

**IT IS FURTHER ORDERED** that a final order enter concurrently herewith.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent